## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| STEVEN MCINTYRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cv-00573-TWP-KMB |
| | ) | |
| GEO GROUP, INC., | ) | |
| WEXFORD OF INDIANA, LLC, | ) | |
| JOHN NWANNUNU, Dr., | ) | |
| JONES, Nurse, | ) | |
| FALCONER, Dr., | ) | |
| J. FRENCH, Ms., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING SUMMARY JUDGMENT FOR GEO GROUP INC., AND JENNIFER FRENCH

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Geo Group, Inc. ("GEO") and Jennifer French ("French") (together, "Defendants") (Dkt. 70). Plaintiff Steven McIntyre ("McIntyre"), a double amputee with two prosthetic legs, at all times relevant was an Indiana prisoner. GEO is a private corporation that operates New Castle Correctional Facility ("New Castle") and French, an employee of GEO, was the assistant administrator of that prison. McIntyre alleges that GEO and French denied him a handicap-accessible cell at New Castle, and that this denial caused him to fall and suffer an injury. He is suing GEO and French for negligence under Indiana tort law; he is also suing French for deliberate indifference to a serious medical need under the Eighth Amendment. As explained below, a reasonable jury could find that these Defendants were negligent and that French was deliberately indifferent. Accordingly, the Defendants' Motion for Summary Judgment is **denied**.[1]

---

[1] McIntyre is also suing Wexford of Indiana, LLC, Dr. John Nwannunu, Nurse Jones, and Dr. Falconer for deliberate indifference and medical negligence. (Dkt. 14 at 3.) The deadline for these defendants to move for summary judgment has not passed. If these defendants choose to file a motion for summary judgment, the Court will rule on that motion in a separate Order.

## I.    <u>SUMMARY JUDGMENT STANDARD</u>

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *See* Federal Rule of Civil Procedure. 56(a).  Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party.  *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).  The court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant.  *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

## II.    FACTUAL BACKGROUND

### A.    The Parties

McIntyre is a former inmate of the Indiana Department of Correction ("IDOC").  (Dkt. 1.)  During the time relevant to this lawsuit, he was incarcerated at New Castle.  *Id.*

GEO is a private corporation that operates New Castle.  (Dkt. 72-1.)  Pursuant to its contract with IDOC, GEO is not responsible for providing inmates at New Castle with medical services "but will ensure a cooperative and unified relationship with established . . . [medical] providers".  *Id.* at ¶1h.  According to its services contract with IDOC, GEO operates New Castle in an "individual capacity and not as [IDOC's] agents."  *Id.* at ¶ 25.

French is a GEO employee.  During the time relevant to this lawsuit, she was the Assistant Facility Administrator for New Castle.  (Dkt. 72-7 at ¶ 2.)  In this role, French had control over cell assignments for inmates.  *Id.* at ¶¶ 15-16.  She was aware of McIntyre's disability and his requests for a handicap-accessible cell during his time at New Castle.  *Id.* at ¶ 3.

### B.    McIntyre's disability and fall on March 3, 2020

McIntyre is a double amputee with two prosthetic legs.  (Dkt. 88-1 at ¶ 2.)  He sometimes uses a wheelchair to navigate his surroundings, but he was not given a wheelchair at New Castle and had to use his prostheses to move around.  *Id.* at ¶ 3.

McIntyre was transferred to New Castle on February 28, 2020.  *Id.* at ¶ 5.  At the time of his transfer, McIntyre had IDOC classification codes of "G" for "Medical" and "C" for Disability.  An IDOC official had requested that McIntyre be transferred to a protective custody unit sixteen days before his transfer to New Castle.  (Dkt. 72-4.)

When he arrived at New Castle, McIntyre was initially assigned an upper-level cell.  (Dkt. 88-1 at ¶ 6.). On February 29, 2020, he was taken to the medical unit for his Intra-Facility Intake.  (Dkt. 72-7 at ¶ 9.)  After his Intra-Facility Intake, McIntyre was moved to a lower-level cell within

3

the medical unit.  *Id.* at ¶ 10; Dkt. 88-1 at ¶ 8.  The cell lacked handicap accommodations, such as handrails to help him move in and out of bed.  (Dkt. 88-1 at ¶ 9.)

Upon his transfer to New Castle, McIntyre immediately informed GEO staff that he needed a handicap-accessible cell with handrails due to his wheelchair and prosthetic limbs.  *Id.* at ¶ 7. Between February 28, 2020 and March 2, 2020, McIntyre made numerous verbal requests to GEO staff to be moved to a handicap-accessible cell with handrails because he was having difficulty getting around his cell.  *Id.* at ¶ 11.  On March 2, 2020, McIntyre formally requested, in writing, a transfer to a handicap-accessible cell.  *Id.* at ¶ 12; Dkt. 72-7 at ¶ 15.  At that time, there were two handicap-accessible cells in the medical unit.  These handicap-accessible cells were occupied by inmates without disabilities.  *Id.* at 10.

The next day, McIntyre fell while attempting to move from his bed.  (Dkt. 88-1 at ¶ 13.) Because his cell did not have handrails, he tried to brace himself on his television stand.  *Id.* at ¶ 14.  As a result, he sustained serious injuries to his right hand, requiring his knuckles to be realigned, among other treatment.  *Id.* at ¶ 15; Dkt. 72-6. McIntyre was not transferred to a handicap-accessible cell until March 23, 2020, approximately three weeks after his formal written request and subsequent fall.  (Dkt 88-1 at ¶ 16.)

French states in her affidavit that McIntyre's IDOC classification codes "did not make it readily apparent" that he needed a handicap-accessible cell, and that McIntyre did not have a "medical prescription for a handicap-accessible cell."  (Dkt. 72-7 at ¶ 18.)  She and other GEO employees at New Castle were aware of McIntyre's request for a handicap-accessible cell, but the process of placing McIntyre in a handicap-accessible cell "takes more than the less-than-one-day of notice that we had of his wanting a handicap accessible cell."  *Id.* at ¶ 19.  According to French, that process "could require us transferring either Offender McIntyre or other offenders to outside facilities to make room."  *Id.*

4

## III.  DISCUSSION

The Court previously issued an Order screening McIntyre's Complaint in accordance with 28 U.S.C. § 1915A.  *See* Dkt. 14.  McIntyre is suing GEO and French in her individual capacity for negligence under Indiana tort law based on their alleged failure to provide him with a handicap-accessible cell.  *Id.* at 4.  He is also suing French in her individual capacity for deliberate indifference to a serious medical need in violation of the Eighth Amendment.  *Id.* The Court will discuss his claims in turn.

### A.  Negligence

Under Indiana tort law, negligence has three elements.  The plaintiff must prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury to the plaintiff resulting from the defendant's breach.  *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004).  "[S]ummary judgment is generally inappropriate in negligence cases because issues of contributory negligence, causation, and reasonable care are more appropriately left for the trier of fact." *Lyons v. Richmond Community School Corp.*, 19 N.E.3d 254, 262 (Ind. 2014) (emphasis removed).   "The standard for negligence is the reasonable care that an ordinary person would exercise in like or similar circumstances." *Ladra v. State*, 177 N.E.3d 412, 425 (Ind. 2021).

GEO and French concede that they owed McIntyre a duty of care but challenge the elements of breach and causation.  *See* Dkt. 71 at 6-7 (conceding that "GEO owes a duty to Plaintiff" but that "a reasonable jury is forced to conclude that they met the standard of care in providing Plaintiff a cell in the M-unit"; and "there is no possible way for Plaintiff to prove, as he is required to, that his injuries are a result of being in a M-unit cell, as his slip-and-fall accident, if believed to have occurred as Plaintiff describes it, could not have been prevented by handrails"); *see also Sauders v. County of Steuben*, 693 N.E.2d 16, 18 (Ind. 1998). ("[w]hen a party is in the custodial care of another . . . the custodian has the duty to exercise reasonable care to preserve the

life, health, and safety of the person in custody. The appropriate precautions will vary according to the facts and circumstances presented in each case.")

1.    **Breach**

GEO and French argue that they provided McIntyre with reasonable care because they placed him in a handicap-accessible cell "only a matter of weeks after [he] request[ed] additional accommodations, to include handrails." (Dkt. 71 at 6.) Their argument on breach is two-fold. First, that it was reasonable to leave McIntyre in a non-handicap-accessible cell for three weeks because arranging cell transfers is a time-intensive process. *Id.* Second, that IDOC did not classify McIntyre as requiring a handicap-accessible cell and that the medical staff did not place an order for McIntyre to receive a handicap-accessible cell. *Id.*

Applying the standards for Indiana negligence law to the evidence in the record, the Court finds that a reasonable jury could conclude that GEO and French breached the standard of care. McIntyre's disability is obvious—he is a double amputee with two prosthetic legs. (Dkt. 88-1 at ¶ 2.) GEO employees failed to provide McIntyre with a wheelchair (Dkt. 88-1 at ¶ 3), so his only way of getting out of bed was to pull himself up onto his prostheses. GEO employees then failed to provide McIntyre with a handicap-accessible cell. (Dkt. 88-1 at ¶ 10.) There were two handicap-accessible cells in the medical unit that were occupied by inmates without disabilities, *id.*, and the Defendants have not presented evidence that explains why moving McIntyre into one of these cells before his fall was not feasible.

The Court is mindful of the administrative tasks involved in moving an inmate to a new cell, as well as the division of labor within prisons. These are factors that the jury may consider in deciding whether the Defendants' conduct was reasonable under the totality of the circumstances. But the undisputed evidence is that GEO and French had the authority to move

McIntyre into a handicap-accessible cell to accommodate his disability, and there is scant evidence in the record to explain why it took them so long—even after McIntyre's fall—to do so.

### 2.   **Causation**

GEO and French argue there is "no possible way" McIntyre could prove that his fall was caused by their failure to provide him with a handicap-accessible cell.  (Dkt. 71 at 6.)  However, McIntyre has provided such evidence in his affidavit, where he states that he fell because he had to brace himself using a television stand due to the lack of handrails in his cell.  (Dkt. 88-1 at ¶ 14.)  From this evidence, a reasonable jury could conclude that McIntyre's fall was caused by the lack of handrails in his cell and that he would not have fallen but for the failure of GEO and French to place him in a handicap-accessible cell.

To summarize, the Court cannot say as a matter of law that GEO and French met the standard of care, and there is evidence that McIntyre's fall was caused by their failure to place him in a handicap-accessible cell.  Accordingly, the Defendants' Motion for Summary Judgment is **denied** as to McIntyre's negligence claims.

### B.   **Eighth Amendment**

### 1.   **Deliberate Indifference Standard**

Because McIntyre was a convicted prisoner, his medical care is evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment.  *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").  The Eighth Amendment "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain."  *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014).  "To determine if the Eighth Amendment has been violated in the prison medical context, [the Court] perform[s] a two-step analysis, first examining whether a plaintiff suffered from an

objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 772, 727-728 (7th Cir. 2016) (en banc).

"A prison official is deliberately indifferent only if he 'knows of and disregards an excessive risk to inmate health or safety.'" *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837(1994)).  This is a subjective test: "[t]he defendant must know of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference." *Id.*; *Petties*, 836 F.3d at 728.

    2.   **<u>Analysis</u>**

French concedes that McIntyre's disability was a serious medical need and that she knew about his disability during the time relevant to this lawsuit.  (Dkt. 71 at 7; dkt. 72-7 at ¶ 3.)  Thus, the issue is whether French recklessly disregarded a risk to McIntyre's safety by leaving him in a non-handicap-accessible cell without a wheelchair for three weeks.

French cites *Greeno v. Daley*, 414 F.3d 645 (7th Cir. 2005) for the proposition that she was entitled, as a non-medical prison official, to defer to the treatment decisions of McIntyre's physicians. (Dkt. 71 at 8.)  She also argues that her actions "were based on [her] reliance on the information provided to [her] by medical staff persons and IDOC classifications paperwork, indicating Plaintiff's placement in [protective custody] was sufficient." *Id.* at 8-9.

The Court is unpersuaded by these arguments for three reasons.

First, *Greeno* is distinguishable.  That case dealt with a non-medical defendant's deference to a physician's treatment decisions.  *Greeno*, 414 F.3d at 656-57.  Here, the issue is not about a choice of medical treatment but about the administrative tasks involved in moving McIntyre from a non-handicap-accessible cell to a handicap-accessible cell.  Such administrative tasks do not

8

require expert medical knowledge; they require the very experience French had as the Assistant Facility Administrator for New Castle.

Second, McIntyre's medical records from his Intra-Facility Intake on February 29, 2020, and his visit to the nursing station on March 4, 2020, are silent about whether the medical staff believed he should have been placed in a handicap-accessible cell. *See* Dkts. 72-5, 72-6. They do not support the proposition that the medical staff believed McIntyre should remain in a non-handicap-accessible cell or that the medical staff ordered McIntyre to remain in a non-handicap-accessible cell. Nor does the evidence support the proposition that requests for placement in a handicap-accessible cell must be, or are typically, initiated by the medical staff at New Castle.

Third, the summary judgment record is not well-developed with respect to IDOC classification codes. There is no evidence that the request to place McIntyre in protective custody, his "G" classification for Medical, or his "C" classification for Disability, amounted to a designation by IDOC that McIntyre did not need a handicap-accessible cell.

As mentioned in Section III-A above, there is evidence that McIntyre needed a handicap-accessible cell, that this need was obvious, and that there were two handicap-accessible cells in the medical unit that were occupied by inmates without disabilities. There is no evidence that moving McIntyre into one of these cells was unfeasible. And yet, French waited three weeks to move McIntyre into a handicap-accessible cell—even after his fall and injury. From this evidence, a reasonable jury could conclude that the three-week delay in moving McIntyre arose from French's deliberate indifference to McIntyre's disability rather than from legitimate, penological concerns. Accordingly, French's motion for summary judgment is **denied** as to McIntyre's Eighth Amendment claim.

## IV.   **CONCLUSION**

The Motion for Summary Judgment filed by Defendants GEO and French, Dkt. [70], is

**DENIED**.  The Magistrate Judge has previously scheduled a conference for February 17, 2023, to

discuss the status of this case and for scheduling a settlement conference. At that conference the

parties should also set deadlines for the resolution of the claims against these Defendants, so that

the Court can also schedule a trial date.

**SO ORDERED**.

Date:  2/10/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Steven McIntyre
346 South Walcott Street
Indianapolis, Indiana  46201

Adam Garth Forrest
BBFCS ATTORNEYS
aforrest@ffbcslaw.com

Joseph Thomas Lipps
BBFCS ATTORNEYS
jlipps@ffbcslaw.com

Joseph A. Panatera
CASSIDAY SCHADE LLP
jpanatera@cassiday.com

Marley Genele Hancock
CASSIDAY SCHADE LLP
mhancock@cassiday.com

James R.A. Dawson, Recruited Counsel
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
jdawson@taftlaw.com

Jeffrey Wayne Parker, Jr., Recruited Counsel
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
jparker@taftlaw.com